**John LASCO, Plaintiff-Appellant,**

v.

**Richard R. NORTHERN, et al.,
Defendants-Appellees.**

**No. 82–2033.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 9, 1984.

Decided May 3, 1984.

**478**

James M. Drake, West Springfield, Ill., for plaintiff-appellant.

Karen Konieczny, Sp. Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, and WOOD and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

The question presented for review is whether the district court properly denied a preliminary injunction to prevent a state agency reorganization and the resulting layoff of the plaintiff. Jurisdiction of this interlocutory appeal is based on 28 U.S.C. § 1292(a)(1). The district court's May 26, 1982, order denying injunctive relief is affirmed.

The instant appeal involves a suit brought by the plaintiff under 42 U.S.C. § 1983 and § 1985 and the First and Fourteenth Amendments of the United States Constitution alleging a violation of his employment rights. A brief recitation of the background and history of this case is in order.

## I.

In 1976, Lasco was employed as a civil servant with the Illinois Veterans' Home in Quincy ("Home"). He was given notice that he was being laid off pursuant to a reorganization at the Home. The plaintiff sought to enjoin his layoff contending that his supervisors, who were Democrats, conspired to deprive him of his job because of his political affiliation with a particular faction of the Democratic Party. The facts of this lawsuit are set out in detail in *Lasco v. Koch*, 428 F.Supp. 468 (S.D.Ill.1977). At that time the district court granted a preliminary injunction prohibiting the plaintiff's layoff and stayed further exercise of jurisdiction pending consideration by the Illinois Civil Service Commission of the validity of the reorganization and the related question of layoff as a subterfuge for discharge.

Independent of the prior proceedings, in July of 1977, the plaintiff was involved in an altercation with a security guard at the Home.[1] Lasco was suspended for failure

---

1. The facts surrounding the altercation with the security guard at the Veterans' Home are in dispute.

to cooperate in the investigation and was thereafter discharged in August of 1977 for conduct unbecoming a state employee. The plaintiff requested a hearing before the Illinois Civil Service Commission and was reinstated in January of 1978. Upon his return, Lasco allegedly was informed by the defendant Northern that all of his health care and supervisory functions had been transferred to other individuals. The plaintiff then requested an audit of his position which resulted in a downward shift of his employment status from Welfare Executive III to Administrative Assistant II pursuant to the order of defendant William Boys, Director of Personnel for the Illinois Veterans' Home. In response to this action, the plaintiff filed suit in district court alleging the existence of a conspiracy to deny him his employment in violation of the First Amendment and 42 U.S.C. § 1983. Various hearings and audits were held, resulting in the plaintiff's reinstatement as a Welfare Executive III. In 1978, the plaintiff filed a complaint asserting that his supervisors, now Republicans, were conspiring to remove him from his position because he was an active member of the Democratic Party. The district court denied the defendant's motion to dismiss the complaint for failure to state a claim, reasoning that harassment of a public employee solely because of his political affiliation could be as chilling and restrictive on the exercise of First Amendment rights as the patronage dismissals denounced by the Supreme Court in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). On April 15, 1982, the Illinois Civil Service Commission adopted the findings of their hearing officer and ruled that the plaintiff be restored to his Welfare Executive III position and that he be permitted to perform the concomitant duties and responsibilities of that position.

However, the plaintiff was notified by letter dated April 14, 1982, that he was being laid off, effective May 15, 1982, as a result of the elimination of the position due to a reorganization necessitated by a lack of funds. The layoff affected the plaintiff and five other employees involved in non-direct patient care. (During this period new individuals were hired to fill positions involved directly with patient care.) The plaintiff filed the instant suit in district court seeking injunctive relief to prevent his layoff.

On May 26, 1982, United States District Court Judge J. Waldo Ackerman denied the plaintiff's request for preliminary injunctive relief. The court noted that the plaintiff was pursuing his administrative remedies and stayed the action pending resolution by the Illinois Civil Service Commission. The court explicitly stated, however, that the order was not intended to reflect in any way on the merits of the plaintiff's case before the Commission. On March 17, 1983, the Commission determined that the plaintiff failed to offer evidence that his layoff was politically motivated. The Commission found that the layoff due to the lack of funds was not a pretext for discharge since the agency's reorganization was proper.

## II.

■ The scope of this appeal is limited to review of the propriety of the lower court's denial of preliminary injunctive relief in May of 1982. The record discloses that the United States District Court has not ruled on the merits of plaintiff's 42 U.S.C. § 1983 and § 1985 claims nor on his various constitutional claims.

As Judge Ackerman correctly recognized, the decision of *Ciechon v. City of Chicago*, 634 F.2d 1055 (7th Cir.1980) is germane to the issue presented in this appeal. In that case, our court reversed the grant of a preliminary injunction enjoining the suspension of fire department employees prior to a full hearing before the City of Chicago Personnel Board. While the district court in *Ciechon* found that loss of wages, employee benefits and opportunities for promotion during the suspension period

constituted irreparable injury, the court of appeals disagreed. *Id.* at 1057.

The court began by stating that appellate review of preliminary injunctions is limited in scope and that an order granting an injunction will be set aside "only where it can be said that the discretion vested in the district court with respect to these matters has been improvidently exercised." *Id.* at 1057 (citations omitted). The court delineated the elements that a movant must establish to obtain a preliminary injunction: "(1) a reasonable likelihood of success on the merits; (2) irreparable injury and absence of an adequate remedy at law; (3) that the threatened harm to plaintiff outweighs the harm the injunction may cause defendant; and, (4) that the granting of the injunction will not disserve the public interest." *Id.* at 1057 (*citing Local Div. 519, Amalgamated Transit Union v. LaCrosse Municipal Transit Utility,* 585 F.2d 1340, 1351 (7th Cir.1978); *Fox Valley Harvestore v. A.O. Smith Harvestore Products, Inc.,* 545 F.2d 1096, 1097 (7th Cir.1976); *Illinois Migrant Council v. Pilliod,* 540 F.2d 1062, 1069 (7th Cir.1976)). Furthermore, the court emphasized that "a preliminary injunction is an extraordinary remedy which is not available unless the plaintiffs carry their burden of persuasion as to all the prerequisites." *Id.* at 1057 (*citing Fox Valley Harvestore,* 545 F.2d at 1097).

## A. PLAINTIFF FAILED TO ESTABLISH A REASONABLE LIKELIHOOD OF SUCCESS ON THE MERITS.

In finding that the plaintiff had failed to establish a reasonable likelihood of success, the district court held:

> In light of the failure of plaintiff to show a connection between the actions taken and its political affiliation, as well as the reasons advanced by defendants for the layoff, plaintiff has failed to show a reasonable likelihood of success on the merits.

(following the test established in *Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

In *Mount Healthy City School District* a non-tenured teacher was not rehired allegedly for exercising his First Amendment rights. The Supreme Court vacated the court of appeals' judgment and remanded for a determination to be made according to what it held to be the proper allocation of the burden of proof.

> Initially in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected and that this conduct was a 'substantial factor'—or, to put it in other words, that it was a 'motivating factor' in the Board's decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct.

429 U.S. at 287, 97 S.Ct. at 576. The Seventh Circuit in *Nekolny v. Painter,* 653 F.2d 1164 (7th Cir.1981) adopted the *Mount Healthy* test:

> It should also be noted that the plaintiff has the initial burden of proving by a preponderance of the evidence that the protected conduct was a 'substantial' or 'motivating' factor. That burden is not insignificant. A disgruntled employee fired for legitimate reasons would not be able to satisfy his burden merely by showing that he carried the political card of the opposition party or that he favored the defendant's opponent in the election.

*Id.* at 1168 (footnote omitted).

In the present case the district court made clear findings regarding the reasonable likelihood of success on the merits.

> Plaintiff has failed to show that the layoff has resulted from the exercise by him of constitutionally protected activities .... [H]e has charged both the Democrat and Republican administrations with improper actions because of his political beliefs. Rather, it appears that plaintiff

is a difficult employee with whom good interpersonal relationships do not exist with co-workers.

The district court also noted, assuming *arguendo* that plaintiff satisfied the first part of the *Mount Healthy* test (i.e., that his "conduct" was constitutionally protected) that the state may then show that fiscal restraints were a valid motive for the layoffs of public employees. *Wren v. Jones*, 635 F.2d 1277, 1286 (7th Cir.1980). The trial court noted that "in any event, defendants contend that plaintiff's duties had been distributed among several other positions, constituting a reorganization and eliminating the need for his position. In addition, defendants cite fiscal constraints as necessitating a total of six layoffs of persons not involved in direct patient care."

B. PLAINTIFF FAILED TO ESTABLISH IRREPARABLE INJURY AND ABSENCE OF AN ADEQUATE REMEDY AT LAW.

■ *Oburn v. Shapp*, 521 F.2d 142, 151 (3d Cir.1975) counsels that "what constitutes irreparable injury in a case depends upon the particular facts of that case." In *Ciechon v. City of Chicago, supra,* 634 F.2d 1055, this court held that in the context of public employment the loss of wages, employee benefits, and opportunities for promotion during a period of suspension do not constitute irreparable injury and do not warrant the granting of a preliminary injunction. *Id.* at 1057–58. In that decision, our court relied on *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) holding that since employees vindicated in suspension hearings would receive backpay, their injury was not irreparable. In this regard, the district court correctly found that Department of Personnel Rule 2–597 [2] expressly provides for backpay to be awarded to an employee who was improperly laid off.

The district court's reliance on the corrective relief available to the plaintiff through the state's administrative remedies seems well founded. In previous actions involving this plaintiff, the Illinois Civil Service Commission has shown its willingness to take the necessary corrective action when deemed appropriate. Both the plaintiff and the defendants have conceded that the Civil Service Commission has the authority to determine whether plaintiff's layoff is appropriate. We agree with the district court there has been no showing of irreparable injury.

As previously stated, it is the plaintiff's burden to establish all four elements enunciated in *Ciechon v. City of Chicago, supra,* 634 F.2d at 1057. Since the plaintiff failed to establish two of those elements we need not consider the remaining two elements.

As Judge Ackerman concluded:

> Certainly, a decision to abolish, department-wide, certain positions and to distribute those duties among other existing positions is a matter for the particular state agency to decide, free from interference by a federal court. All things being equal, federalism, comity and proper respect by federal courts for proceedings of state agencies require such restraint.

The judge's comments are insightful for they recognize that federal courts cannot be involved in every employment decision or dispute that occurs in this nation. In no way should this decision be viewed as an approval of political hirings or firings but rather it should be viewed as a reaffirmation that the granting of a preliminary injunction is truly an extraordinary remedy. We hold that the district court properly denied a preliminary injunction and correctly declined to prevent a state agency reor-

**2.** Rule 2–597 *Reinstatement from Layoff:*
An employee reinstated for the period for which he/she was improperly laid off shall receive full compensation for such period: Full compensation shall mean compensation such laid off employee would have earned in the position classification during the period of layoff less amounts earned by the employee from any other source including any unemployment payments received during such period. [Effective March 1, 1980].

ganization which resulted in the layoff of plaintiff from his employment. We affirm.